IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SANTOS GOMEZ, Institutional ID No. 07175363, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 5:23-CV-059-BQ |
| JESSICA MARSH, *et al.*, | § § § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**

Pro se Plaintiff Santos Gomez filed this action under 42 U.S.C. § 1983, along with a request to proceed *in forma pauperis* (IFP). ECF Nos. 1, 2. The United States District Judge transferred this case to the undersigned United States Magistrate Judge for preliminary screening under 28 U.S.C. § 1915. ECF No. 10. After reviewing Gomez's request and supplemental documentation (ECF Nos. 2, 16, 18), the undersigned recommends that the district judge deny the application to proceed IFP and dismiss this action without prejudice. *See* ECF No. 2.

**I.    Background**

Gomez is an adjudicated sexually violent predator (SVP) civilly committed for inpatient treatment at the Texas Civil Commitment Center (TCCC) under the supervision of the Texas Civil Commitment Office (TCCO). ECF No. 1, at 4–5, 10; *see* TEX. HEALTH & SAFETY CODE § 841.081. As he explains, "TCCO operates a [five]-tier system: Tier One being the lowest, with the highest supervision level and highest number of restrictions for housing, and Tier Five being the highest, with the lowest supervision level and lowest number of restrictions for housing." ECF

No. 1, at 29; *see* ECF No. 2, at 7[1] (characterizing Tier Five as "transition/release to the community"). Gomez states that Tier Four and A.G.E.[2] patients must "be employed by [Management & Training Corporation (MTC)] in order to acquire, save and hold funds in their MTC/TCCC Trust Fund Account and/or personal bank accounts." ECF No. 2, at 7. Although unclear, Gomez is apparently a Tier Four resident as he earns $661 per month through his employment at the TCCC.[3] *Id.* at 1–2, 6–7. He further estimates that he has $600 in his resident trust fund and $9,500 in a Wells Fargo savings account. *Id.* at 2. That is, Gomez has more than $10,000 in savings and receives $661 monthly. *See* ECF No. 16, at 10 (resident account statement dated Mar. 30, 2023, reporting $1,560.77); ECF No. 18, at 65–68 (bank statement dated Feb. 15, 2023, showing balance of $9,135.81). He reports that the money in these accounts is "solely from his earnings while employed by MTC." ECF No. 2, at 7.

Gomez nevertheless asserts that he "is barred by" policy from using his money "for anything except the use of funding his transition/release to the community on Tier Five." *Id.* He further alleges that the use of those funds in pursuit of this action would be a violation of the institution's policies, possibly resulting in disciplinary sanctions. *Id.* The Court ordered Gomez to submit documentation substantiating these claims. ECF No. 11, at 2. In response, Gomez provided four documents, highlighting certain provisions:

    1.    Supplemental Rules for Clients Living in an Approved Home Plan

---

[1] Page citations to Gomez's filings refer to the electronic page number assigned by the Court's electronic filing system.

[2] Gomez does not define "A.G.E." The TCCO website provides the following definition: "Advanced Group Environment (AGE) – The least restrictive dorm within the TCCC which houses the highest level Tier 4 SVP Clients." *Definitions & Acronyms*, https://tcco.texas.gov/sites/tcco/files/documents/tcco-definitions-acronyms.pdf (last visited May 16, 2023).

[3] Based on allegations in Gomez's Complaint, he was "Tier 4 with AGE pending" prior to October 23, 2021, but Defendants unlawfully reduced him to Tier Two and "still continue to disregard and utterly defy" court orders instructing them to reinstate Gomez's Tier Four status. ECF No. 1, at 15–29. Even so, Gomez is apparently employed, which he alleges is a privilege afforded to Tier Four patients and not Tier Two patients. *Id.* at 29–30.

"I may be returned to a more restrictive alternative residence if I violate any conditions of Civil Commitment." "I agree to maintain financial responsibility for the residence as well as other requirements."

2. Transition to Home Plan

"Upon . . . approval, the Case Manager shall submit a home plan packet with . . . [a] copy of the client's most recent bank statement(s) that reflect 3 months' worth of saved living expenses" and a "[p]lan for loss of income/employment."

3. Community-Based Civil Commitment Rules

"I agree to maintain financial responsibility for the residence as well as other requirements." "I agree to provide a copy of my monthly bank statement(s) and credit card statement(s) to my Case Manager as well as to provide verification of my income and annual tax returns."

4. Safety Plan for Proposed Residence

"Please address on a separate piece of paper the following situations regarding independent living and submit to your treatment provider and case manager for approval[:]" (1) "What if I can no longer afford to live at a private residence due to loss of income or other circumstances?" (2) "What if I lose my job or income?"

ECF No. 16, at 15–24.

## II.  Discussion

"[P]roceeding [IFP] in a civil case is a privilege, not a right . . . ." *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998) (quoting *Rivera v. Allin*, 144 F.3d 719, 724 (11th Cir. 1998), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). Whether to permit or deny an application to proceed IFP is within the sound discretion of the court, and in reviewing the application, the court may evaluate all financial resources available to an applicant. *See Prows v. Kastner*, 842 F.2d 138, 140 (5th Cir. 1988) (upholding the district court's rejection of a motion to proceed *in forma pauperis* and noting that the district court has discretion to consider the applicant's expenses and income in making such a determination). The court may consider the total monetary resources available to assist the applicant, including a spouse's income, in making this determination. *See id.* (holding that § 1915(a) "provide[s] access to federal courts for plaintiffs

who lack the financial resources" to pay filing costs). A court may also review and consider whether plaintiff's expenses are discretionary or mandatory. *Id.*

The Court concludes that Gomez has the necessary financial resources to pay the required $402.00 filing fee.[4] First, Gomez has more than $10,000 in savings, earns a monthly income[5] that exceeds the filing fee, and reports having no monthly expenses due to his civil commitment. ECF No. 2, at 1–2, 4–7. Moreover, Gomez failed to support his representation that he "is barred" from using these funds to pay the filing fee. *Id.* at 7. At best, the documentation Gomez provided requires only "3 months' worth of saved living expenses"[6] and the demonstration of general "financial responsibility" should Gomez advance to Tier Five community living. ECF No. 16, at 15–24. These rules in no way preclude Gomez from paying the filing fee in this action.

Finally, Gomez's resident trust account statements belie his assertion that all funds in his resident trust account and Wells Fargo account "are solely from his earnings while employed by MTC." ECF No. 2, at 7. The statements indicate that on April 26, 2022, Gomez received $2,000 via postal money orders. ECF No. 16, at 6. There is no evidence that this money was earned at his job, and the record in fact strongly suggests the opposite, and it increased his account balance to $3,598.20.[7] *Compare id.* (reporting postal money order deposits), *with id.* at 10 (listing payroll deposits beginning December 2022). Gomez maintained a balance of more than $3,000 until January 24, 2023, when he transferred $3,000 to his personal Wells Fargo account. *Id.* at 10; ECF

---

[4] If a plaintiff has not been granted leave to proceed *in forma pauperis*, he must pay the $350 fee plus a $52 administrative fee, resulting in a total filing fee of $402. *See* District Court Miscellaneous Fee Schedule.

[5] Gomez's records reveal that his paycheck is deposited directly into his resident trust account—the same account from which he purchases postage, food, commissary, and phone time. ECF No. 16, at 9–10 (showing that between January 1 and March 30, 2023, Gomez spent (1) approximately $104 in phone time, and (2) $25.97 in discretionary food), 10 (December 2022, January 2023, and February 2023 payroll deposits).

[6] Gomez failed to supply documentation indicating the cost of three months' worth of expenses. *See* ECF No. 16.

[7] Gomez does not explain, and the financial records he provided do not show, the source of the $1,598.20 already in his account. *See* ECF No. 16, at 5–6.

No. 18, at 65–66. Thus, even if Gomez had adequately shown that he cannot use the money earned at his job, the undersigned would recommend denial of IFP on the grounds that Gomez has approximately $2,000 in personal funds available to pay the filing fee.[8]

Accordingly, Gomez has failed to demonstrate that he is a pauper, and the district judge should deny his motion to proceed IFP. *See, e.g., Woodards v. Traurig*, No. 3:11–CV–2678–L–BH, 2011 WL 6934966, at *1 (N.D. Tex. Nov. 22, 2011) ("Because Plaintiff has sufficient income and limited monthly expenses, she will not suffer undue financial hardship after payment of the . . . filing fee, and her application to proceed *in forma pauperis* should be denied."), *R. & R. adopted by* 2011 WL 6934965 (N.D. Tex. Dec. 30, 2011); *United States v. Freeman*, No. 05–29, 2010 WL 4363884, at *2 (E.D. La. Oct. 21, 2010) (finding prisoner "ineligible to proceed *in forma pauperis*" because he had "$1196.71 in his prison account, earn[ed] $40.00 per month, and receive[d] $300.00 per month in gifts from family"); *United States v. Gharbi*, No. A–04–CR–180(13) LY, 2010 WL 11545386, at *1 (W.D. Tex. May 4, 2010) (concluding plaintiff "failed to establish she [was] unable to pay the" appellate filing fee because she "receiv[ed] regular monthly income, and ha[d] a substantial amount of cash on hand"), *R. & R. adopted by* 2010 WL 11545387 (W.D. Tex. June 14, 2010); *Daniels v. United States*, No. 3:02-CV-676-G, 2002 WL 31298866, at *1 (N.D. Tex. Oct. 10, 2002) (denying IFP where prisoner had $1,300 in savings).

In addition to this finding, the Court must resolve one other issue related to Gomez's application. The IFP statute provides that a court "shall dismiss the case at any time if [it] determines . . . that the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A); *see Castillo*

---

[8] According to Gomez's records, he received no further deposits between the April 2022 money orders and January 17, 2023, when $533.60 was deposited for "December 2022 payroll." ECF No. 16, at 6–10. Gomez's account balance immediately prior to the January deposit (three weeks prior to filing suit and a week before transferring $3,000 to his Wells Fargo account) was $3,216.76. *Id.* Giving Gomez the benefit of the doubt, and assuming all expenditures drawn from his account came from the $2,000 money orders (rather than his claimed "exempt" earnings), he had used, at most, only $381.44 of the non-earnings money (subtracting $3,216.76 from beginning balance following the April money order deposits of $3,598.20, *id.* at 6), leaving at least $1,600 of "non-exempt monies" to pay the filing fee.

*v. Blanco*, 330 F. App'x 463, 466 (5th Cir. 2009) (per curiam) (observing that the statute "is phrased in mandatory rather than permissive terms"). The statute does not define the term "untrue," and courts have recognized that there is some question as to "whether dismissal is premised on the falsity of the allegations, or on the falsity of poverty status." *Bucklew v. St. Clair*, No. 3:18-CV-2117-N (BH), 2019 WL 2250886, at *2 n.8 (N.D. Tex. May 15, 2019), *R. & R. adopted by* 2019 WL 2249718 (N.D. Tex. May 24, 2019); *see Stancu v. Hyatt Corp./Hyatt Regency Dall.*, No. 3:18-cv-1737-E-BN, 2021 WL 2003992, at *3 (N.D. Tex. Apr. 30, 2021) (concluding "that Congress meant something like 'dishonest' or 'false,' rather than simply 'inaccurate'" (quoting *Robertson v. French*, 949 F.3d 347, 351–52 (7th Cir. 2020))), *R. & R. adopted by* 2021 WL 1966877 (N.D. Tex. May 17, 2021).

The record here supports a finding that Gomez's IFP application contains false allegations in support of an untrue poverty claim. Even assuming Gomez misunderstood—rather than misrepresented—the institutional rules concerning his ability to use any income in pursuit of this action, Gomez's financial records undermine his claim that "[a]ll funds" in his resident trust account and Wells Fargo account "are solely from his earnings while employed by MTC." ECF No. 2, at 8 (declaring under penalty of perjury). As set forth above, Gomez received $2,000 via postal money orders in April 2022, and his resident account maintained a balance exceeding $3,000 until he transferred $3,000 to his personal bank account approximately one week before filing the instant IFP application.[9] ECF No. 16, at 6–10. Gomez has failed to provide any evidence or explanation for this misrepresentation, and the dollar amount in question would easily cover the required filing fee.[10]

---

[9] *See supra* note 8.

[10] Gomez's IFP application also includes other discrepancies. *See, e.g.*, ECF No. 2, at 6–7 ("In the past twelve months, I have not received any money from: a. Business, profession or form of self-employment, b. rent payments, interest or dividends, c. Pensions, annuities, or life insurance payments, d. Gifts or inheritances, e. Any form of public

The undersigned therefore recommends dismissal without prejudice under § 1915(e)(2)(A).[11] *See Castillo*, 330 F. App'x at 466; *Guinn v. United States*, No. 5:22 CV38 DCB-LGI, 2023 WL 2769450, at *3 (S.D. Miss. Mar. 7, 2023) (recommending dismissal where applicant "failed to provide any evidence or explanation for the inconsistencies in his IFP applications"), *R. & R. adopted by* 2023 WL 2762026 (S.D. Miss. Apr. 3, 2023); *Bucklew v. Bonham*, No. 3:19-CV-435-N-BH, 2022 WL 869686, at *4 (N.D. Tex. Feb. 9, 2022) (recommending dismissal "[b]ecause false allegations of poverty mandate dismissal under § 1915(e)(2)(A)"), *R. & R. adopted by* 2022 WL 865899 (N.D. Tex. Mar. 23, 2022); *Balliviero v. Konrad*, No. 01–2014, 2002 WL 139911, at *3 (E.D. La. Jan. 31, 2002) (observing that "1915(e)(2)(A) clearly mandates dismissal at any time when there has been a misrepresentation in a petitioner's allegation of poverty"), *aff'd*, 57 F. App'x 211 (5th Cir. 2003).

Alternatively, if Gomez files a timely objection to this Report and Recommendation showing good cause for the discrepancies identified herein, Gomez should be directed to pay the filing fee within fourteen (14) days from the date of any order denying his motion to proceed IFP.

### III. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **DENY** Gomez's IFP application and **DISMISS** this action without prejudice under § 1915(e)(2)(A). ECF No. 2. In the alternative, if Gomez files a timely objection showing good cause for any discrepancies in his IFP application, the district judge should **DENY** Gomez's IFP application and order him to pay the $402.00 filing fee within fourteen (14) days.

---

assistance, f. Any other sources."), 7 ("I do not have any cash or money in a checking or savings account.").

[11] The events of which Gomez complains begin in August 2021. ECF No. 1. Generally, a plaintiff in Texas has two years from the date he learns of facts giving rise to his § 1983 claims to pursue the claims in federal court. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); *Meyer v. Coffey*, 231 F. Supp. 3d 137, 145–46 (N.D. Tex. 2017). Accordingly, the statute of limitations will not prevent Gomez from refiling his claims.

### IV.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 16, 2023.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE